# COURT OF APPEALS OF VIRGINIA

### Record No. 0516-25-2

WALTER SMITH

v.

CARLOS M. BROWN, RECTOR, UNIVERSITY OF VIRGINIA[1]

Present: Chief Judge Decker, Judges Beales and Athey

Argued at Richmond, Virginia

Opinion Issued June 30, 2026

## FROM THE CIRCUIT COURT OF HENRICO COUNTY
John Marshall, Judge

Walter Smith, *pro se.*

Peter S. Askin (John P. O'Herron; Robert M. Tyler, Senior Assistant Attorney General, Deputy University Counsel; *Thompson*McMullan, P.C., on brief), for appellee.

## PUBLISHED OPINION BY
## CHIEF JUDGE MARLA GRAFF DECKER

This appeal arises from Walter Smith's petition for a writ of mandamus for disclosure of certain documents from the University of Virginia (UVA) under the Virginia Freedom of Information Act (VFOIA). The circuit court granted the petition in part and denied it in part, ordering disclosure of some of the requested documents. On appeal, Smith argues that the court erred by determining that the documents at issue were "working papers" exempt from disclosure. We affirm the judgment of the circuit court.

---

[1] Smith filed the petition for a writ of mandamus against Robert Hardie in his capacity as rector of UVA. Rachel W. Sheridan then succeeded Hardie. Pursuant to Code § 8.01-17(B) and Rule 5A:1(g)(3), by automatic operation of law, the style of the case now reflects Carlos M. Brown, the current rector of the University of Virginia, as the appellee. For ease of reference, this opinion refers to the rector or appellee rather than Hardie, Sheridan, or Brown.

BACKGROUND

Smith filed various VFOIA requests with UVA. The university produced some documents but withheld others as "working papers" exempt from disclosure. Smith then filed a petition for a writ of mandamus against the rector of UVA. Smith sought disclosure of the withheld documents.

The circuit court held a hearing on the petition. As relevant here, the disputed documents included (1) an email and attachments concerning the University Guide Service, (2) two documents created to prepare University President James Ryan for a trip he was to take in his official capacity, and (3) drafts of two joint statements, one pertaining to UVA admissions and the other involving a conflict in the Middle East. Smith argued that these contested documents were not working papers and therefore required disclosure. The rector maintained that they were President Ryan's working papers. On behalf of the rector, counsel submitted the disputed documents to the circuit court for in camera review.[2] A signed declaration by President Ryan about the purposes of the various documents at issue was also presented to the court.

After reviewing the documents and conducting a hearing, the circuit court denied the petition as to these documents on the basis that they met the working-papers exemption to disclosure under VFOIA.

ANALYSIS

On appeal, a VFOIA claim presents "a mixed question of law and fact." *Hawkins v. Town of South Hill*, 301 Va. 416, 424 (2022) (quoting *Va. Dep't of Corr. v. Surovell*, 290 Va. 255, 262 (2015)). The appellate court "give[s] deference to [the circuit] court's factual findings and view[s] the facts in the light most favorable to the prevailing part[y]," here the appellee. *Id.*

---

[2] This Court reviewed the documents for purposes of rendering this decision, but they remain under seal.

(fourth alteration in original) (quoting *Surovell*, 290 Va. at 262). In according this deference, we are "bound by the circuit court's 'findings of fact unless they are plainly wrong or without evidence to support them.'" *City of Virginia Beach v. Mathias*, 85 Va. App. 94, 101-02 (2025) (quoting *Forbes v. Cantwell*, 78 Va. App. 454, 472 (2023)). At the same time, legal issues such as "statutory interpretation and a circuit court's application of a statute to its factual findings" are considered de novo by the reviewing court. *Hawkins*, 301 Va. at 424 (quoting *Cole v. Smyth Cnty. Bd. of Supervisors*, 298 Va. 625, 636 (2020)).

"The Virginia Supreme Court has long held that 'when analyzing a statute, we must assume that "the legislature chose, with care, the words it used . . . and we are bound by those words as we [examine] the statute"'" at issue. *Eley v. Commonwealth*, 70 Va. App. 158, 163 (2019) (alterations in original) (quoting *Doulgerakis v. Commonwealth*, 61 Va. App. 417, 420 (2013)). In fact, "the intention of the legislature . . . is usually self-evident from the statutory language." *Id.* (quoting *Armstead v. Commonwealth*, 55 Va. App. 354, 360 (2009)).

In conducting this analysis, we are guided by some general principles. "In interpreting [a] statute, 'courts apply the plain meaning . . . unless the terms are ambiguous or applying the plain language would lead to an absurd result.'" *Mathias*, 85 Va. App. at 109 (quoting *Harris v. Commonwealth*, 83 Va. App. 571, 581 (2025) (alterations in original)). A statute is ambiguous if "the text can be 'understood in more than one way or refers to two or more things simultaneously.'" *Minium v. Hines*, 83 Va. App. 643, 651 (2025) (quoting *Taylor v. Commonwealth*, 298 Va. 336, 342 (2020)). Statutory language is also ambiguous if it "is difficult to comprehend, is of doubtful import, or lacks clearness or definiteness." *Id.* (quoting *Taylor*, 298 Va. at 342). And if a "statute's terms are undefined" by the legislature, courts assign "those words . . . their 'ordinary meaning,' in light of 'the context in which [they are] used.'"

*Va. Marine Res. Comm'n v. Chincoteague Inn*, 287 Va. 371, 384 (2014) (second alteration in original) (quoting *Lawlor v. Commonwealth*, 285 Va. 187, 237 (2013)).

Against the backdrop of these well-established rules of statutory construction, we turn to the statutes at issue here.

"[T]he General Assembly enacted VFOIA to 'ensure[] the people of the Commonwealth ready access to public records in the custody of a public body or its officers and employees.'" *Suffolk City Sch. Bd. v. Wahlstrom*, 302 Va. 188, 204 (2023) (second alteration in original) (quoting Code § 2.2-3700(B)). Under the act, "[e]xcept as otherwise specifically provided by law, all public records shall be open to citizens of the Commonwealth." *Hawkins*, 301 Va. at 424 (alteration in original) (quoting *Bergano v. City of Virginia Beach*, 296 Va. 403, 408 (2018)).

In short, the act "favor[s] . . . disclosure." *Commonwealth v. Sawyer*, 84 Va. App. 547, 561 (2025) (quoting *Hawkins*, 301 Va. at 424). But as the act itself makes clear, there are specifically tailored exemptions. It states, "[a]ny exemption from public access to records . . . *shall be narrowly construed* and no record shall be withheld . . . unless specifically made exempt pursuant to this chapter or other specific provision of law." *Id.* (quoting Code § 2.2-3700(B)).

Relevant here, one exemption from mandatory disclosure applies to "[w]orking papers" of certain government officials, including "the president . . . of any public institution of higher education in the Commonwealth." Code § 2.2-3705.7(2). "[W]orking papers" are defined as "those records prepared by or for a public official identified in this subdivision for his personal or deliberative use." *Citizens for Fauquier Cnty. v. Town of Warrenton*, 81 Va. App. 363, 376 (2024) (quoting Code § 2.2-3705.7(2)). Whether a record constitutes a "working paper" is a question of fact. *Sawyer*, 84 Va. App. at 563-64.

With this legal framework in mind, we next turn to the specific documents at issue.

## I. Email Concerning University Guide Service

Smith argues that an email concerning the University Guide Service was informational and "not created for President Ryan's deliberative use."

At trial, Smith admitted this was "probably a working paper." Yet he questioned whether the email and attachments were prepared for Ryan's deliberative use. Smith suggested Ryan did not use it for deliberative purposes because "it t[ook] him a year and a half to make a decision." But when the court noted, "He's got to think about it," Smith responded, "[H]e did a lot of th[ink]ing." The court denied the VFOIA request expressly because of Smith's concession. Smith did not object to this ruling, either at that time or in a later motion.

The appellee asserts that this Court cannot consider Smith's challenge to the University Guide Service email because he did not object at trial to the court's conclusion that he conceded that the working-papers exemption applied. Smith now counters that he did not make a concession and instead was speaking "sarcastically."

The record reflects that the circuit court did not address the applicability of the working-papers exemption to the email, instead ruling for the rector on the basis of Smith's concession. No ruling of the circuit court "will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. Requiring "timely and specific objections" ensures "that the . . . court has an opportunity to rule intelligently on the issues presented, thus avoiding unnecessary appeals and reversals." *Hannah v. Commonwealth*, 303 Va. 109, 125 (2024) (quoting *Brown v. Commonwealth*, 279 Va. 210, 217 (2010)); *see Maxwell v. Commonwealth*, 287 Va. 258, 265 (2014). "An appellate court can only 'determine whether or not the rulings and judgment of the court below . . . were correct.'" *Toghill v. Commonwealth*, 289 Va. 220, 237 (2015) (alteration in original) (quoting *Scialdone v. Commonwealth*, 279 Va.

422, 437 (2010)).  Here, the circuit court based its decision on Smith's concession instead of the applicability of the exemption, and Smith did not object.  So there is no ruling on the working-papers exemption for this Court to review.[3]  *See Minium*, 83 Va. App. at 650 n.5.

Consequently, this assignment of error is unavailing.

## II.  Documents Concerning President Ryan's Trip

On appeal, Smith argues that the documents for President Ryan concerning a trip he took in his official capacity were not created for Ryan's personal or deliberative use.

The circuit court held the working-papers exception applied to those documents.  Again, the term "'[w]orking papers,'" for purposes of the statute, "means those records prepared by or for a public official . . . for his personal or deliberative use."  Code § 2.2-3705.7(2).  The clear words of the statute provide an "either-or" framework.  Working papers can be for either personal use or deliberative use.  And of course they can be for both.  The statute does not define the terms personal or deliberative, so we turn to the dictionary definitions.  *See, e.g.*, *Jones v. Commonwealth*, 296 Va. 412, 415 (2018) (relying on the statutory language and a standard dictionary definition); *Joseph v. Commonwealth*, 64 Va. App. 332, 338-39 (2015) (relying on multiple legal and non-legal dictionary definitions).

"[P]ersonal" in part means "[of] or relating to a particular person."  *Personal*, *Webster's Third New International Dictionary* (2002) [hereinafter *Webster's*]; *see Personal*, *Black's Law Dictionary* (12th ed. 2024) (defining "personal" in part as "of or affecting a person").  Another "dictionary definition of the word 'personal' . . . means 'exclusively for a given individual.'"

---

[3] Smith's suggestion that the circuit court erred by finding he conceded this point falls outside the scope of his assignments of error.  *See* Rule 5A:20(c)(1) ("Only assignments of error listed in the brief will be noticed by this Court.").  Further, by not objecting to the ruling, Smith did not give the circuit court an opportunity to cure the alleged error.  *See* Rule 5A:18.  As a result, we do not consider this argument.  *See Zinner v. Wash. Gas Light Co.*, 85 Va. App. 220, 246 n.12 (2025); Rule 5A:18.

*Eley*, 70 Va. App. at 166-67 (quoting *Personal*, *Webster's*, *supra*). "[D]eliberative" means "relat[es] to, or marked by deliberation[;] proceeding or acting by discussion and examination." *Deliberative*, *Webster's*, *supra*. *See generally City of Virginia Beach v. U.S. Dep't of Com.*, 995 F.2d 1247, 1253 (4th Cir. 1993) ("Deliberative material 'reflects the give-and-take of the consultative process,' by revealing the manner in which the [organization] evaluates possible alternative policies or outcomes." (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980))).

When the term "personal" is considered in context of the statute, documents are for personal use if they are prepared for the purpose of aiding the particular official with performing the duties of his office. *See generally Glunk v. Dep't of State*, 102 A.3d 605, 614 (Pa. Commw. Ct. 2014) (interpreting the phrase "personal use" under Pennsylvania's Right-to-Know Law as denoting documents that are "necessary for that official . . . in carrying out his public responsibilities" (quoting *City of Philadelphia v. Phila. Inquirer*, 52 A.3d 456, 461 (Pa. Commw. Ct. 2012))). As explained by the Attorney General of Virginia, for the working papers "exclusion . . . to be applicable[ under VFOIA], there must be some factor that specially relates an official record to the chief executive officer's," or in this case, the university president's, "requirements for the conduct of his office." 1980-81 Op. Va. Att'y Gen. 395 (considering the working-papers exception under an earlier version of the statute). *See generally Berry v. Bd. of Supervisors*, 302 Va. 114, 138 n.12 (2023) ("Although the construction of a statute by the Attorney General is not binding upon this Court, it is of 'persuasive character.'" (quoting *Clinchfield Coal Co. v. Robbins*, 261 Va. 12, 18 (2001))).

The travel documents at issue were expressly created to prepare President Ryan for a trip he made to Richmond, Virginia, for the purpose of meeting with members of the legislature in his official capacity as president of UVA. The primary purpose of these documents was clearly

to aid Ryan in the performance of the duties of his office. So they were for his personal use for purposes of the statute. These documents also reflect a deliberative component relating to the legislative meetings. Therefore, the circuit court correctly held that the documents constitute working papers and were exempt from disclosure.[4]

### III. Drafts of Joint Statements

Smith argues that the drafts of the joint statements do not qualify as working papers because they were to be issued jointly with others at UVA who were not covered by the exemption. He suggests that by including other UVA officials outside the VFOIA exemption on a draft joint statement, it loses its personal or deliberative use purpose.

One of the statements at issue was about an opinion of the Supreme Court of the United States impacting university admissions. Ryan issued this statement jointly with the UVA provost. The other statement at issue pertained to the university's response to a conflict in the Middle East and its impact on the university. Ryan issued this statement jointly with the UVA provost and the university's executive vice president and chief operating officer. Smith sought disclosure of earlier drafts of both of these statements.

The circuit court ruled that the drafts of the statements constituted President Ryan's working papers, regardless of the fact that the statements released were joined by others in the university administration.

As relevant here, the statute exempts from disclosure the "[w]orking papers" of "the president or other chief executive officer of any public institution of higher education in the Commonwealth." Code § 2.2-3705.7(2). And "'[w]orking papers'" are "those records prepared

---

[4] Since Smith does not argue that the circuit court erred by not releasing any of the documents challenged on appeal in redacted versions, this opinion does not address the appropriateness of redaction. *See* Rule 5A:20 (limiting our review to assignments of error listed in the opening brief and requiring that the opening brief contain "argument" and the related legal framework).

by or for a public official identified in this subdivision for his personal or deliberative use." *Id.*

Contrary to Smith's suggestion, the statute's definition does not limit working papers to documents prepared *exclusively* by or for a public official identified in the subsection so long as it is prepared for the personal or deliberative use of that person. In other words, the plain text of the statute does not support Smith's interpretation. *See generally Verizon Va. LLC v. State Corp. Comm'n*, 302 Va. 467, 477 (2023) (recognizing that courts "may not 'add[] language to or delet[e] language from a statute'" (quoting *Appalachian Power Co. v. State Corp. Comm'n*, 284 Va. 695, 706 (2012) (alterations in original))).

Our analysis is consistent with guidance from the Virginia Freedom of Information Advisory Council (VFIAC).[5] *See generally Wahlstrom*, 302 Va. at 205 n.10 (noting that the council's "advisory opinions, while not binding on the Court, are instructive" (quoting *Transparent GMU v. George Mason Univ.*, 298 Va. 222, 243 (2019))). The VFIAC set out three factors relevant to determining whether the working-papers exemption to VFOIA applies:

1. The purpose for which the record was created;

2. The person for whom the record was created;

3. Whether the official who holds the exemption has disclosed the record to others, and if so, whether that disclosure was (i) necessary or desirable to further the official's own deliberative process, or (ii) dissemination beyond the personal or deliberative use of the official who holds the exemption.

*See* Va. Freedom of Info. Advisory Council, Advisory Op. AO-02-15 (Mar. 27, 2015), https://perma.cc/HH3C-WPEZ. The third of these factors recognizes that sharing a document or record with someone who does not hold the exemption may actually facilitate the deliberative process if the facts support such a conclusion.

---

[5] "The Advisory Council was 'created . . . to encourage and facilitate compliance with' VFOIA . . . ." *Wahlstrom*, 302 Va. at 205 n.10 (quoting Code § 30-178(A)).

This third factor also makes clear that a working paper loses its personal or deliberative use purpose when shared only if the disclosure was not to aid in the deliberative process or went beyond the scope of personal or deliberative use. In his signed declaration, President Ryan represented that the other individuals included on the drafts were included for his "deliberative purpose in determining the final content of the statement[s], including who the signatories . . . would be." The draft joint statements underwent several revisions fine-tuning the university's responses to certain current events that impacted it. These earlier drafts reflect President Ryan's deliberative process and the limited dissemination did not exceed the scope of his deliberative use. As such, inclusion of other university officials on the drafts did not take the documents outside the working-papers exemption.

Smith argues that public policy supports ruling in his favor because ruling otherwise would "greatly expand the universe of documents withheld from public scrutiny by merely having others join [the public official], 'sharing' his personal exemption." Our holding here does not expand the exemption to swallow the rule as Smith fears. This analysis focuses on the core of the exemption—whether the papers were for President Ryan's personal or deliberative use— and whether the disclosures to other university officials who fall outside the exemption were part of Ryan's deliberative process.[6]

Smith also suggests that once released, the statements "became official UVA policy, not private deliberation." To the extent, if any, Smith is arguing that the drafts lost their working-paper status when the joint statements were issued, he did not make this argument below.

---

[6] We decline Smith's invitation to engage in a policy analysis because appellate courts in the Commonwealth are "committed to neutral principles of interpretation" and "'are not "free to pave over bumpy statutory texts in the name of more expeditiously advancing a policy goal."'" *Appalachian Power Co.*, 301 Va. at 279 (quoting *Sw. Airlines Co. v. Saxon*, 596 U.S. 450, 463 (2022)).

Consequently, it is barred by Rule 5A:18.[7]  *See* Rule 5A:18 (limiting appellate review to issues specifically raised at trial at the time of the adverse ruling).

For these reasons, the circuit court correctly held that the drafts of the joint statements were working papers under VFOIA and as such were exempt from disclosure.

CONCLUSION

Smith's challenge to the application of the working-papers exemption to the email and attachments concerning the University Guide Service is procedurally defaulted under Rule 5A:18.  The record viewed in the light most favorable to the appellee, as the party who prevailed in the circuit court, supports the circuit court's findings that the report concerning President Ryan's trip and the drafts of two joint statements that were made by him and other UVA officials were working papers.  As a result, we affirm the decision.

*Affirmed.*

---

[7] We note that Smith also argues that the earlier drafts of a released statement cannot be shielded from disclosure by the working-papers exemption.  This appears to be an issue of first impression in Virginia.  In the federal context, some courts have rejected this proposition.  *See generally City of Virginia Beach*, 995 F.2d at 1253 ("[T]he deliberative process exemption protects 'recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency.'" (quoting *Coastal States*, 617 F.2d at 866)); *Dudman Commc'ns Corp. v. Dep't of Air Force*, 815 F.2d 1565, 1569 (D.C. Cir. 1987) (holding that an agency may withhold a draft document if there is a "danger" of a "'chilling'" effect on communication within the agency); *Reliant Energy Power Generation, Inc. v. FERC*, 520 F. Supp. 2d 194, 204 (D.D.C. 2007) (holding that earlier drafts of a public document may reflect the deliberative process).  Regardless, in light of the procedural bar applicable here, we do not reach the merits of this issue.  *See Rebh v. Cnty. Bd.*, 303 Va. 379, 382 (2024) (per curiam) ("Our doctrine of judicial restraint requires appellate courts to decide cases 'on the best and narrowest ground available.'" (quoting *McGhee v. Commonwealth*, 280 Va. 620, 626 n.4 (2010))).